ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| IN RE: LUIS MANUEL IRIZARRY PABÓN ALCALDE, MUNICIPIO AUTÓNOMO DE PONCE<br><br>Parte Recurrente<br><br><br>v.<br><br><br>OFICINA DEL PANEL SOBRE EL FISCAL ESPECIAL INDEPENDIENTE (PFEI) - UNIDAD DE PROCESAMIENTO ADMINISTRATIVO DISCIPLINARIO (UPAD)<br><br>Parte Recurrida | KLRA202400496 | *Revisión Judicial,* procedente de la Oficina del Panel sobre el Fiscal Especial Independiente, Unidad de Procesamiento Administrativo Disciplinario<br><br><br>Caso Núm.: UPAD-2023-0038<br><br>(Proveniente de la UPAD Caso núm. Q 2023-060)<br><br><br><br>Sobre: Suspensión Sumaria |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de septiembre de 2024.

Compareció ante este Tribunal la parte recurrente, Sr. Luis Manuel Irizarry Pabón (en adelante, "señor Irizarry Pabón" o el "Recurrente"), mediante recurso de revisión judicial presentado el 6 de septiembre de 2024. Nos solicitó la revocación de la *Resolución* emitida por el Panel sobre el Fiscal Especial Independiente (en adelante, el "Panel"), el 21 de agosto de 2024. Mediante el referido dictamen, el Panel acogió un Informe suscrito por la Lcda. Edna Palou Elosegui, Oficial Examinadora de la Unidad de Procesamiento Administrativo Disciplinario de dicha entidad gubernamental, y procedió a suspenderle al Recurrente el sueldo y el restante de los beneficios económicos, efectivo el 1 de noviembre de 2023, fecha en que se dispuso de la medida cautelar de suspensión de sus funciones como alcalde del Municipio Autónomo de Ponce.

Por los fundamentos que expondremos a continuación, *confirmamos* la *Resolución* recurrida.

**I.**

El recurso de epígrafe tuvo su origen el 31 de octubre de 2023, con la presentación de cuatro (4) denuncias en contra del señor Irizarry Pabón ante el Tribunal de Primera Instancia, Sala Municipal de Ponce (en adelante, "TPI"), por violaciones al Artículo 251 de la Ley Núm. 146-2012, según enmendada, conocida como el "Código Penal de Puerto Rico de 2012", 33 LPRA sec. 5342 y al Artículo 4.2 (b) de la Ley Núm. 1-2012, según enmendada, conocida como la "Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico". Ese mismo día, el TPI determinó causa probable para arresto en contra del Recurrente, en todos los cargos presentados por la Oficina del Panel sobre el Fiscal Especial Independiente (en adelante, la "OPFEI").

Luego de dicha determinación, en horas de la tarde, la Unidad de Procesamiento Administrativo Disciplinario del OPFEI (en adelante, "UAPD") presentó un Informe ante el Panel mediante el cual recomendó que se procediera con la suspensión sumaria inmediata de empleo y sueldo del señor Irizarry Pabón, como medida cautelar, mientras finalizaba el procedimiento penal iniciado en su contra y, a su vez, se considerara la suspensión de cualquier otro beneficio económico que éste percibiera. Entendió la UPAD que existía causa suficiente para creer que el Recurrente había cometido delito grave, delito contra la función pública y el erario o delito menos grave que implica depravación moral.

Así pues, el 1 de noviembre de 2023, el Panel emitió una *Resolución* en la cual acogió el Informe. Como consecuencia, suspendió sumariamente al Recurrente de sus funciones como alcalde del Municipio Autónomo de Ponce, con efectividad inmediata. Además, se le ordenó que entregara todos los bienes muebles municipales en su poder y se le prohibió tener acceso o intervenir por sí o mediante terceros con documentos o efectuar gestiones o tomar decisiones en el ayuntamiento. Igualmente, se le

proscribió personarse en cualquiera de las instalaciones o dependencias del Municipio hasta tanto se dispusiera finalmente del proceso.

**Del mismo modo, se le ordenó al señor Irizarry Pabón a que mostrara causa por la cual no se le debía suspender de salario, así como del plan médico o cualquier otro beneficio económico que percibía como parte de sus funciones como alcalde. Para ello, se le concedió hasta las 2:00 de la tarde del 3 de noviembre de 2023, apercibiéndolo de que, de no recibir comunicación sobre el asunto, se procedería a decretar la suspensión inmediata de todo beneficio económico.** También se le informó sobre su derecho a solicitar reconsideración de la suspensión ante el Panel dentro del término de quince (15) días.

Así las cosas, el 3 de noviembre de 2023, el señor Irizarry Pabón acudió ante este Tribunal mediante un recurso de revisión judicial, caso núm. KLRA202300572, y una "**Moción en Auxilio de Jurisdicción**" a través del cual peticionó la revocación de la *Resolución* del 1 de noviembre de 2023 emitida por el Panel, bajo el argumento de que no fue notificado adecuadamente y que no se cumplió con el estándar de prueba y los criterios requeridos por la Ley Núm. 2 de 23 de febrero de 1988, según enmendada, conocida como "Ley de la Oficina del Panel sobre el Fiscal Especial Independiente", 3 LPRA sec. 99h *et seq*. (en adelante, "Ley Núm. 2 de 1988" o "Ley del FEI"). Además, señaló que tampoco se siguió el Reglamento Núm. 9124 de 14 de noviembre de 2019, conocido como el "Reglamento de la Unidad de Procesamiento Administrativo Disciplinario" (en adelante, "Reglamento Núm. 9124"). **En esa misma fecha, el Recurrente compareció ante el Panel para exponer su postura respecto a que no se le suspendiera del salario y otros beneficios monetarios**.

El 14 de noviembre de 2023, dispusimos del referido recurso de revisión, confirmando la *Resolución* del Panel respecto a la suspensión sumaria de empleo y devolviendo el caso a la OPFEI para que celebrara una vista administrativa en la cual se adjudicara, de forma final, la

procedencia de la medida cautelar de suspensión de sueldo y otros beneficios económicos. **A tenor con lo anterior, desestimamos el recurso en lo relacionado con los argumentos sobre la suspensión de salario y otros beneficios, por estos ser prematuros**.

Tras haber comparecido ante el Tribunal Supremo de Puerto Rico mediante recurso de *certiorari* presentado el 1 de diciembre de 2023 para cuestionar nuestra *Sentencia*, y luego de que dicho foro denegara la expedición del auto mediante *Resolución* de 2 de febrero de 2024, se le asignó a la Lcda. Palou Elosegui el rol de actuar como Oficial Examinadora para atender el trámite administrativo restante, de conformidad con nuestro mandato. Así las cosas, la conferencia informal se llevó a cabo el 11 de marzo de 2024. Allí, la representación legal del señor Irizarry Pabón expresó que la vista preliminar en los casos criminales no había concluido, por lo que era necesario la paralización de los procedimientos administrativos hasta que finalizara el proceso criminal pendiente. Luego de escuchar los planteamientos de ambas partes, la Oficial Examinadora ordenó la paralización de los procedimientos administrativos.

Posteriormente, el 11 de abril de 2024, el Tribunal halló causa para juicio en dos (2) de los cuatro (4) delitos graves imputados al Recurrente, específicamente, los cargos bajo el Artículo 4.2 de la Ley de Ética Gubernamental, *supra*, y el Artículo 252 del Código Penal, *supra*. En vista de lo anterior, la OPFEI radicó una moción informativa solicitando que se tomara conocimiento oficial de dichas determinaciones. Basado en lo anterior, el 19 de abril de 2024, la OPFEI peticionó que se fijara con prontitud una audiencia administrativa. Así pues, la vista fue programada para el 13 de junio de 2024.

Posteriormente, faltando siete (7) días calendario de la fecha señalada para la vista, el señor Irizarry Pabón presentó una "**Moción Acreditando el Allanamiento del Querellado a la Solicitud de Suspensión de Salario**", mediante la cual informó que se allanaba expresamente a la suspensión de sueldo solicitada, precisando que dicho allanamiento sería válido a partir de la emisión de la resolución por parte

del Panel al respecto y hasta tanto se resuelva a su favor el procedimiento criminal pendiente en su contra o hasta que expire su mandato como Alcalde, lo que ocurriese primero. Posteriormente, la OPFEI presentó su Réplica a dicha solicitud. Tras atender los planteamientos de ambas partes, la Oficial Examinadora reafirmó el señalamiento de la vista pautado para el 13 de junio de 2024.

Luego de celebrarse la referida vista, el Recurrente expuso sus argumentos respecto a la suspensión de su salario y otros beneficios económicos, y reiteró su posición en cuanto a que la efectividad de dicha medida cautelar debía ser a partir de que el Panel emitiera una determinación a esos efectos. Así las cosas, la Oficial Examinadora presentó el correspondiente Informe. A través de éste, manifestó que la medida cautelar impuesta de suspensión sumaria de empleo está justificada, mientras se lleva a cabo el proceso penal en contra del señor Irizarry Pabón. Asimismo, concluyó que la suspensión del salario y otros beneficios económicos está atada a dicha suspensión de empleo. Expresó que un allanamiento equivale a renunciar a presentar alegaciones posteriores a su favor y a someterse a los resultados legales que ese allanamiento pudiera acarrear. Así pues, recomendó que se suspendiera al Recurrente de sueldo y de los restantes beneficios económicos y que dicha suspensión tuviera efectividad retroactiva al 1 de noviembre de 2023. Finalmente, el 21 de agosto de 2024, el Panel emitió una *Resolución* a través de la cual acogió las recomendaciones de la Oficial Examinadora y procedió a decretar la suspensión de salario y otros beneficios monetarios del Recurrente desde la fecha en que se le suspendió de empleo, a saber, el 1 de noviembre de 2023.

Inconforme con lo anteriormente resuelto, el señor Irizarry Pabón acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló el siguiente error:

> ERRÓ LA OPFEI AL SUSPENDER AL ALCALDE DE SUELDO Y DE LOS RESTANTES BENEFICIOS ECONÓMICOS CON EFECTIVIDAD RETROACTIVA AL 1RO DE NOVIEMBRE DE 2023, FECHA EN QUE EL ALCALDE FUE SUSPENDIDO SUMARIAMENTE DE SUS

FUNCIONES, POR SER CONTRARIO AL ALLANAMIENTO VERTIDO Y AL DEBIDO PROCESO DE LEY.

El 23 de septiembre de 2024, compareció el Panel mediante "**Alegato al Recurso de Revisión y Solicitud de Desestimación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia

reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la

agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

La Sección 7 del Artículo II de la Constitución de Puerto Rico le asegura a todo ciudadano que no será privado de su propiedad o libertad, sin un debido proceso de ley. 1 LPRA Art. II, Sec. 7. Esta garantía proviene de las Enmiendas V y XIV de la Constitución de los Estados Unidos de América. La cláusula del debido proceso de ley en la jurisdicción federal tiene como fin ulterior evitar que el Gobierno utilice sus poderes como un instrumento de subyugación. Davidson v. Cannon, 474 US 344, 348 (1986). También se implantó para impedir que dichas facultades sean manejadas de manera arbitraria e irrazonable. Daniels v. Williams, 474 US 327, 331 (1986). Existen dos dimensiones de este principio cardinal: (1) la procesal y (2) la sustantiva. Rodríguez Rodríguez v. E.L.A., 130 DPR 562, 575 (1992).

Tanto en la jurisdicción local como en la federal, la vertiente sustantiva del debido proceso de ley se enfoca en proteger los derechos fundamentales de los individuos. *Véase*, Marina Ind., Inc. v. Brown Boveri Corp., 114 DPR 64, 81 (1983). Apoyado en lo anterior, se ha recalcado que el Estado no puede interferir con los intereses propietarios y libertarios de un individuo de manera irracional, injustificada o caprichosa. En su aspecto procesal, esta disposición le atribuye el deber al Estado de garantizarle a toda persona que en aquellas instancias en las que se pretenda intervenir con la libertad o propiedad de esta última, el proceso sea uno justo, equitativo e imparcial. López Vives v. Policía de Puerto Rico, 118 DPR 219, 231 (1987).

Para que surta efecto la protección que brinda este derecho constitucional en su ámbito procesal, tiene que estar en peligro un interés individual ya sea libertario o propietario. "Una vez cumplido este requisito, corresponde determinar cuál es el procedimiento exigido (what process is due)". Rodríguez Rodríguez v. E.L.A., *supra*, pág. 578. Dependiendo del contexto, "diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental sea justo e imparcial". Íd.

En armonía con lo anterior, en Mathews v. Eldridge, 424 US 319 (1976), el Tribunal Supremo de los Estados Unidos estableció los criterios que deben ser examinados a la hora de determinar el procedimiento adecuado para privarle a una persona de algún derecho de propiedad o libertad. Éstos son los siguientes: "(1) los intereses individuales afectados por la acción del gobierno; (2) el riesgo de una determinación errada que prive al individuo del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o diferentes, y, (3) el interés gubernamental protegido con la acción sumaria y la viabilidad de usar métodos alternos". Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 888 (1993).

Desde esta perspectiva, el debido proceso de ley exige que en todo procedimiento adversativo se cumplan ciertas formalidades, a saber: (1) la

notificación adecuada de la reclamación instada; (2) que el proceso se lleve a cabo ante un juzgador imparcial; (3) **la oportunidad de ser oído**; (4) el derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) estar asistido por un abogado, y (6) que la decisión sea basada en el expediente. Íd., pág. 889. Ahora bien, aun cuando esta norma constitucional está cimentada en la protección de los derechos fundamentales que ostenta toda persona en nuestra jurisdicción, **su aplicación responde a consideraciones prácticas y circunstanciales**. Domínguez Talavera v. Tribunal Superior, 102 DPR 423, 428 (1974). **De ahí que se disponga que el derecho a ser oído debe ser en un tiempo significativo y de una manera apropiada**. Mathews v. Eldridge, *supra*, pág. 333.

En lo concerniente a la controversia ante nos, el Tribunal Supremo federal expresó en Cleveland Board of Education v. Loudermill, 470 US 532 (1985), que cuando se trata de suspensiones de empleo y sueldo de un empleado público, el debido proceso de ley exige que se celebre una vista informal en la que el empleado pueda conocer los cargos o faltas que se le imputan, así como presentar sus argumentos o defensas. Esta doctrina fue acogida por nuestro Tribunal Supremo en Díaz Martínez v. Policía de P.R., 134 DPR 144 (1993). En dicho precedente, el máximo foro judicial estatal expresó que cuando la retención del empleo cause un peligro significativo a la seguridad de otros, se puede imponer una suspensión sumaria del empleo. Íd., pág. 151. Más adelante, en Quiles Rodríguez v. Supte. Policía, 139 DPR 272, 278 (1995), dicho foro reafirmó que se puede suspender de empleo a un empleado público, sin la celebración de una vista previa, siempre y cuando continúe recibiendo un sueldo y se le brinde, dentro de un plazo razonable, **la oportunidad de ser escuchado en una vista donde se resuelva la controversia**.

No obstante lo anterior, el Tribunal Supremo de Estados Unidos en Gilbert v. Homar, 520 US 924, 930 (1997), enfatizó que el debido proceso de ley, contrario a otras normas jurídicas, no se trata de una concepción técnica con un contenido fijo y ajeno al tiempo, lugar y contexto histórico,

**sino que este es flexible y requiere protecciones procesales congruentes con cada situación particular**. **Así pues, aclaró que el Estado posee un interés significativo en suspender inmediatamente a los empleados que ocupan puestos de confianza con alta visibilidad pública cuando se han presentado cargos por delitos graves en su contra**. Íd., pág. 932. **De igual manera, el Tribunal Supremo de los Estados Unidos expresó que el gobierno no tiene que proveerle a un empleado acusado de delito una licencia con sueldo a expensas de los contribuyentes**. Íd. **Esto pues, si tras la radicación de cargos, sus servicios ya no le son útiles al gobierno, la Constitución de los Estados Unidos no le exige al Estado que corra con el gasto adicional de contratar a un reemplazo, mientras le paga al empleado imputado de delito por labores no rendidos**. Íd. Finalmente, el referido interés del Estado es lo suficientemente importante como para justificar un breve período de suspensión de empleo y sueldo antes de conceder una vista administrativa. Íd., pág. 933.

**III.**

En el presente caso, el Recurrente nos solicitó la revocación de la *Resolución* del Panel, mediante la cual se le impuso como medida cautelar la suspensión de sueldo y otros beneficios económicos. Como único señalamiento de error, el señor Irizarry Pabón plantea que el Panel erró al imponer dicha suspensión con efectividad retroactiva al 1 de noviembre de 2023. No nos convence su postura. Veamos.

Del expediente ante nuestra consideración surge que el 31 de octubre de 2023, se presentaron cuatro (4) denuncias contra el suspendido alcalde del Municipio Autónomo de Ponce, el señor Irizarry Pabón. A raíz de ello, el 1 de noviembre de 2023, el Panel emitió una *Resolución* a través de la cual lo suspendió sumariamente de su empleo y le ordenó que mostrara causa por la cual no se le debía suspender también de su sueldo y otros beneficios económicos, tales como el plan médico. Dos días después, el Recurrente acudió ante este Tribunal solicitando la revisión de la aludida *Resolución* e incluyó argumentos relacionados con la imposición

de la medida cautelar de suspensión de sueldo y otros beneficios económicos.

Así las cosas, confirmamos la determinación arribada por el Panel en lo concerniente a la suspensión de empleo y **concluimos que la controversia traída ante nuestra consideración en cuanto a la suspensión de sueldo y otros beneficios económicos era prematura**. En consecuencia, devolvimos el caso a la OPFEI para la celebración de una vista administrativa y **se adjudicara de <u>forma final</u> la procedencia de la medida cautelar de suspensión de sueldo y otros beneficios monetarios**. Entretanto, el 11 de abril de 2024, el TPI encontró causa probable para acusar al Recurrente por el delito de enriquecimiento injustificado y por incurrir en prohibiciones éticas como servidor público. Siguiendo nuestro mandato, y tras varias incidencias procesales impertinentes, la Oficial Examinadora a cargo de los procedimientos administrativos fijó la vista para el 13 de junio de 2024.

Siete (7) días antes de la audiencia, el señor Irizarry Pabón presentó moción mediante la cual se allanó a que se le suspendiera su salario y otros beneficios económicos, a partir de la fecha en que el Panel emitiera una determinación a esos efectos. **A pesar de lo anterior, la Oficial Examinadora mantuvo el señalamiento en la fecha prevista y le concedió ambas partes la oportunidad de exponer sus posturas, en torno a la determinación del señor Irizarry Pabón de allanarse a la medida cautelar y a la fecha de efectividad de la misma**. En especial, el Recurrente tuvo la oportunidad de ser oído y pudo presentar sus planteamientos de derecho respecto a la medida cautelar de suspensión de sueldo y otros beneficios económicos, a pesar de que ya se había allanado a que dicha suspensión fuera efectiva. Evaluados los planteamientos esgrimidos por ambas partes, incluyendo el asunto de la fecha de efectividad en la que se impondría la medida cautelar, la Oficial Examinadora rindió un Informe que finalmente fue acogido por el Panel mediante *Resolución* de 21 de agosto de 2024. Allí, el foro recurrido determinó que procedía la suspensión del sueldo y otros beneficios

económicos del señor Irizarry Pabón con efecto retroactivo al 1 de noviembre de 2023, fecha en que fue suspendido sumariamente de empleo.

Conforme hemos adelantado en los acápites anteriores, tanto la Constitución federal como la nuestra, les aseguran a todos los individuos que no serán privados de su propiedad o libertad sin un debido proceso de ley. El propósito de dicha garantía es evitar que el Estado utilice sus poderes como instrumento de opresión. Davidson v. Cannon, *supra*, pág. 348. De conformidad con esta protección constitucional, el Tribunal Supremo de los Estados Unidos estableció ciertos factores que se deben evaluar al momento de intervenir con los derechos propietarios o libertarios de una persona. Estos son los siguientes: (1) los intereses individuales afectados por la acción del gobierno; (2) el riesgo de una determinación errónea que prive al individuo del interés protegido; y (3) el interés gubernamental protegido con la acción sumaria. Mathews v. Eldridge, *supra*, pág. 320.

En lo concerniente a empleados públicos, nuestro máximo foro judicial ha expresado que las suspensiones de empleo sin vista previa son permitidas cuando la retención del trabajo de estos provoque un peligro sustancial a la seguridad de los demás. Díaz Martínez v. Policía de P.R, *supra*, pág. 153. Asimismo, ha manifestado que, respecto a la suspensión de sueldo, se le debe brindar dentro de un término razonable la oportunidad de ser escuchado en una vista donde se adjudique la controversia. Quiles Rodríguez v. Supte. Policía, *supra*, pág. 278. No obstante, el Tribunal Supremo de Estados Unidos ha determinado que el Estado posee un interés significativo en suspender de manera inmediata a aquellos empleados públicos de confianza a los cuales se le han presentado cargos criminales. Gilbert v. Homar, *supra*, pág. 932. **De igual manera, ha sido enfático en que el gobierno no tiene la obligación de proveerle a estos empleados una licencia con sueldo a costa de los contribuyentes**. Íd.

No cabe duda de que en el presente caso se le brindó la oportunidad al señor Irizarry Pabón de expresarse y exponer sus planteamientos

respecto a la suspensión de su salario en una vista administrativa, respetando así, su derecho constitucional a un debido proceso de ley. **Cabe recalcar, que se le proveyó esta oportunidad aun después de este haberse allanado a las consecuencias de la referida medida cautelar**. Es decir, los autos son más que claros en cuanto a que al señor Irizarry Pabón tuvo amplia oportunidad de **ser oído. Éste tuvo tiempo significativo para exponer su postura en torno a la medida cautelar de suspensión de sueldo y otros beneficios económicos, por lo que no existe espacio en derecho para argumentar que la manera en que se le respetó su derecho a un debido proceso de ley no fue la apropiada. Sobre todo, cuando la Oficial Examinadora no tenía que hacerlo, puesto que ya el Recurrente había expresado voluntariamente allanarse a la imposición de la medida cautelar**.

Establecido lo anterior, nos corresponde determinar si el Panel actuó correctamente al imponer la medida cautelar de suspensión de sueldo retroactivamente. Es decir, al día en que se tomó la determinación de suspenderlo de empleo. Contestamos en la afirmativa. Nos explicamos.

Los intereses involucrados en la presente controversia son los siguientes: (1) el interés del Recurrente de tener medios de supervivencia y (2) el interés del Estado de mantener fuera del gobierno municipal a un empleado que ha sido acusado de delitos contra la función pública. **De hecho, no estamos ante un caso en el que se acusa a cualquier funcionario, sino que tenemos ante nuestra consideración un proceso criminal iniciado en contra de la figura principal del gobierno municipal, a quien, por vía del sufragio, los ciudadanos de dicho ayuntamiento le entregaron su confianza para continuar con las riendas del Municipio**. Al realizar un balance de estos intereses, nos queda meridianamente claro que el interés que movió al Estado, por conducto de la OPFEI, de suspenderle el sueldo al Recurrente retroactivamente se impone sobre los intereses que reclama el señor Irizarry Pabón en su recurso. **Esto pues, la seguridad de todos los ciudadanos del Municipio Autónomo de Ponce necesariamente tiene**

**que ir por encima de los intereses particulares del señor Irizarry Pabón**. Con nuestra conclusión, se protege la administración de los fondos de un pueblo, al tiempo que se desincentiva actuaciones que atentan contra la estabilidad moral, fiscal y administrativa de las estructuras de los gobiernos municipales. No existe duda alguna que las actuaciones que se le imputan al Recurrente representan un potencial peligro para la sana la administración del fisco.

Todo ello se atempera con las expresiones del **Tribunal Supremo de los Estados Unidos al disponer que el gobierno no tiene que proveerle a un empleado acusado de delito una licencia con sueldo a expensas de los contribuyentes**. Gilbert v. Homar, *supra*, pág. 932. **Esto pues, si tras la radicación de cargos, sus servicios ya no le son útiles al gobierno, la Constitución no le exige al gobierno municipal que corra con el gasto adicional de contratar a un reemplazo, mientras le paga al empleado imputado de delito por labores no rendidos**. Íd. **Esto está enraizado en que el referido interés del Estado es lo suficientemente importante como para justificar un breve período de suspensión de empleo y sueldo antes de conceder una vista administrativa**. Íd., pág. 933. En suma, acoger la postura del Recurrente equivale a reconocer que su expectativa de percibir un salario por funciones que no está ejerciendo está por encima y tiene preeminencia sobre el propósito que persigue la medida cautelar, que no es otra cosa que mantener la estabilidad en la función gubernamental.

Descartada la presunta violación al debido proceso de ley del Recurrente, puesto que no se celebró una vista administrativa antes de imponerle la medida cautelar de suspensión de sueldo y otros beneficios económicos desde el 1 de noviembre de 2023, pasamos a adjudicar la procedencia del segundo fundamento esgrimido por el señor Irizarry Pabón y que, según su postura, justifica la revocación de la *Resolución* recurrida.

Específicamente, el Recurrente arguye que no procedía su suspensión de sueldo y otros beneficios económicos desde el 1 de noviembre de 2023, toda vez que al momento de allanarse a dicha medida

cautelar se configuró una estipulación judicial que constituyó "una admisión judicial que implica un desistimiento formal de cualquier contención contraria a ella" y, por tanto, la OPFEI actuó en franca contravención de lo estipulado en su moción allanándose a la imposición de la medida cautelar al imponer la fecha de efectividad de la misma al 1 de noviembre de 2023. Como fundamento para dicha postura, cita lo resuelto por el Tribunal Supremo de Puerto Rico en P.R. Glass Corp. v. Tribunal Superior, 103 DPR 223 (1975). Siendo así, se hace imprescindible delinear las controversias a las que se enfrentó el alto foro judicial y los fundamentos de derecho aplicables. Veamos.

En el aludido pleito, el Tribunal Supremo analizó la eficacia de una sentencia dictada a raíz de una moción de desistimiento en una querella sobre una reclamación de salarios, sin ser aprobada por el Secretario del Departamento del Trabajo y Recursos Humanos. Esto pues, en Amer. Col. Broad Corp. v. Tribunal Superior, 94 DPR 283 (1967), se había determinado que era nula y no constituía, por tanto, cosa juzgada una sentencia desestimando una querella en reclamaciones de salarios, dictada a base de una **estipulación** que no fue aprobada por dicho funcionario gubernamental.[1] En lo concerniente al planteamiento esbozado por el señor Irizarry Pabón, el Tribunal Supremo sí concluyó que una estipulación judicial constituía una admisión que implicaba un desistimiento formal de cualquier contención contraria a ella.[2]

No obstante, definió lo que constituye una estipulación dentro del contexto de la presentación de una moción de desistimiento. **A esos efectos, nos instruye el Tribunal Supremo que una estipulación es aquella expresión de conformidad que expone una parte cuando su contraparte desiste de litigar ciertas controversias.**[3] **Es decir, podemos colegir de dichas expresiones que no todo desistimiento constituye una estipulación judicial. Para que ello ocurra, se requiere que la parte contraria esté de acuerdo con la misma**. Solo así, se está

---

[1] P.R. Glass Corp. v. Tribunal Superior, *supra*, pág. 224-225.
[2] Íd., pág. 231.
[3] Íd., pág. 230.

en posición de catalogar el desistimiento de litigar un asunto como una estipulación, con los efectos jurídicos que esta última acarrea. **De hecho, expresa el Tribunal que para que esa estipulación obligue a quienes la suscriben, es indispensable que el foro adjudicador le imparta aprobación.**[4]

Establecido lo anterior, notamos que las circunstancias procesales en el caso de <u>P.R. Glass Corp. v. Tribunal Superior</u>, *supra*, son distinguibles de la realidad acaecida en el caso que nos ocupa. **De conformidad con el tracto fáctico reseñado anteriormente, el señor Irizarry Pabón no desistió de controversia alguna, sino que se allanó a la imposición de la medida cautelar de suspensión de salario y beneficios económicos**. <u>Y es que no podía ser de otra forma, puesto que el mecanismo procesal del desistimiento está disponible para una parte que promueve un procedimiento o una causa de acción</u>. **En el presente caso, el Recurrente no es el promovente del proceso, sino el promovido**. Por tanto, no cabe espacio para argumentar que "desistió" de proseguir con una controversia o asunto. Esa era una herramienta que solo la tenía disponible la OPFEI, como parte promovente del procedimiento administrativo que nos ocupa.

Ahora bien, aun si hiciéramos abstracción de dicha realidad jurídica, lo cierto es que la moción presentada por el Recurrente en la que expresa su intención de allanarse a la suspensión de sueldo, la cual, posteriormente se reiteró durante la vista celebrada en el caso, tampoco puede interpretarse como una estipulación que acarrea el efecto de que el Panel no podía trastocar su determinación de que la medida cautelar se la impusieran prospectivamente. **Esto porque las partes no acordaron** <u>**absolutamente nada**</u>. **El allanamiento a la imposición de la medida cautelar expresado por el señor Irizarry Pabón no constituyó un acuerdo entre las partes que creara una camisa de fuerza para el Panel que no les permitiera variar el alcance temporal del mismo**.

A lo anterior, se le abona la realidad de que los autos apelativos reflejan que la intención de la OPFEI siempre fue imponerle la suspensión

---

[4] <u>Íd</u>.

de sueldo y otros beneficios económicos desde el mes de noviembre de 2023, cuando comenzó el proceso administrativo que nos ocupa y emitió la orden de mostrar causa. **Es decir, el señor Irizarry Pabón no podía imponerle condiciones a la efectividad de la medida cautelar que perseguía la OPFEI desde inicios del caso**. No estamos ante un escenario en el que las partes están dentro de una negociación transaccional, en la que se concretan unos acuerdos y se plasman por escrito. **Todo lo contrario, estamos ante un caso en el que una parte unilateralmente decidió no cuestionar la medida cautelar que promovía la parte promovente de un procedimiento administrativo**. El señor Irizarry Pabón decidió voluntariamente allanarse a la suspensión de sueldo y otros beneficios económicos, y con ello, a los efectos temporales que entendiera el Panel que eran los idóneos, de conformidad con los hechos particulares del caso.

De otro lado, tampoco nos convence el planteamiento esgrimido por el Recurrente, a los efectos de que el Panel decidió "modificar unilateralmente los términos de un allanamiento". Nótese que éste tuvo amplia oportunidad de exponer su argumentos jurídicos durante la vista administrativa celebrada el 13 de junio de 2024. **El hecho de que no se haya acogido su postura sobre la efectividad de la medida cautelar que él propuso no implicó que el Panel hubiera cambiado los términos del allanamiento**. **Simplemente, el Panel se convenció de que la suspensión de sueldo y otros beneficios económicos debía imponerse desde la misma fecha en que se emitió la orden de mostrar causa**. Esa determinación, simplemente, no es contraria a la Ley del FEI ni al Reglamento Núm. 9124. Interpretar lo contrario sería equivalente a reconocer que el Recurrente tiene derecho a un salario pagado con fondos públicos sin ejercer las funciones del cargo. **Revertir la determinación del Panel sería alejarnos de la norma consagrada en nuestra Carta Magna, a los efectos de que sólo se debe disponer de los fondos del estado para fines públicos**.[5] **No sólo eso, equivaldría a permitir que desde**

---

[5] Art. VI, Sección 9 de la Constitución de Puerto Rico, 1 LPRA Art. VI, Sec. 9.

**noviembre de 2023 hasta el presente tengamos a dos (2) funcionarios municipales percibiendo el salario del puesto de alcalde del Municipio Autónomo de Ponce, cuando solo uno (1) de dichos funcionarios está ejerciendo los poderes y facultades de dicho puesto**.

Igualmente, el señor Irizarry Pabón arguye que no se le brindó la oportunidad de defenderse contra la aplicación retroactiva de la suspensión salarial. Nada más lejos de la verdad.

Quedó claro que el Recurrente tuvo la oportunidad durante la vista administrativa celebrada de argumentar sobre la procedencia de su solicitud de allanamiento al remedio promovido por la OPFEI y la efectividad de la misma. **Pero, aunque ello no fuera así, lo cierto es que desde el principio del proceso administrativo iniciado en contra del señor Irizarry Pabón era patente la intención de la OPFEI de imponer la suspensión de sueldo y de otros beneficios económicos a partir del mes de noviembre de 2023**. Sobre este respecto, es menester hacer hincapié en que la activación **a <u>destiempo</u> de la maquinaria judicial por parte del propio Recurrente**, al cuestionar la orden de mostrar causa emitida por el Panel en cuanto a la medida cautelar de suspensión de salarios y otros beneficios económicos, sin que se hubiera adjudicado de forma final, impidió que se pudiera adjudicar con la premura que ameritaba dicha medida cautelar.

Finalmente, es importante resaltar que la suspensión de sueldo iba a ser impuesta desde el mes de noviembre de 2023. **Esto pues, la necesidad de imponer una medida cautelar de esta naturaleza nace cuando se presentan las circunstancias que ameritan dicha imposición**. En nuestro caso, la imposición de la suspensión de salario era justificable desde el 31 de octubre de 2023, fecha en que se radicaron las cuatro (4) denuncias contra el señor Irizarry Pabón. **Lo anterior, implica que tampoco se le violó su derecho a un debido proceso de ley al aplicar la medida retroactivamente**. Incluso, fue el propio Recurrente, a través del agotamiento **<u>prematuro</u>** de los trámites apelativos, que la evaluación de la procedencia de la aludida medida cautelar quedó

postergada. **Esto, a su vez, provocó que el señor Irizarry Pabón continuara recibiendo dinero y beneficios económicos por servicios no rendidos desde noviembre de 2023 hasta el día de hoy**. De hecho, **el mismo día que el señor Irizarry Pabón presentó el primer recurso ante nuestra consideración bajo el alfanumérico KLRA202300572, radicó igualmente una oposición a la suspensión de salario y otros beneficios económicos ante la OPFEI, acentuándose así la prematuridad de dicho planteamiento en aquella ocasión**.

Es decir, de no haber sido por su **iniciativa a destiempo**, no hubiese recibido el sueldo que ahora alega que debe devolver y que constituye un derecho adquirido. **El agotamiento prematuro de un trámite apelativo no puede servir de fundamento para "crear" un derecho adquirido. Acoger dicho argumento, equivale a permitir que una parte abuse del derecho**.

Dispuesto lo anterior, no debemos perder de perspectiva que estamos ante una **medida cautelar y no una determinación final dentro de un proceso administrativo que depende, en gran medida, del desenlace del proceso criminal que se lleva en contra del señor Irizarry Pabón**. Así pues, habiendo concluido que el Panel actuó de conformidad con nuestro ordenamiento jurídico, se hace innecesario discutir la procedencia de los argumentos sobre enriquecimiento ilícito e irretroactividad de las leyes que expone el Recurrente, puesto que la revisión que efectuamos los tribunales apelativos sobre las determinaciones de los foros recurridos se da contra el resultado y no contra los fundamentos.[6]

En resumidas cuentas, colegimos expresamente que el Recurrente no aportó evidencia ni argumentos legales suficientes para derrotar la presunción de corrección de la cual está investida la *Resolución* del Panel. En el ejercicio de nuestra función revisora, venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la

---

[6] Es norma reiterada de derecho apelativo que la revisión se da contra la sentencia o decisión apelada; es decir, contra el resultado y no contra sus fundamentos. Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 DPR 906, 920 (2001).

discreción o pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron y, por tanto, no se cometió el error imputado.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones